IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY RODRIGUEZ and RYAN WELLCOME, *individually and on behalf of all others similarly situated* | : : : : | CIVIL ACTION<br><br>No. 20-1207 |
| v. | : | |
| PYRAMID OPERATING GROUP, INC., ET AL. | | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                          **March 17, 2023**

      Plaintiffs Anthony Rodriguez and Ryan Wellcome bring this collective action under the Fair Labor Standards Act ("FLSA"), seeking to recover unpaid overtime compensation on behalf of Assistant Managers employed at International House of Pancakes, operated by Defendants Pyramid Operating Group, Exton Operating Group, and HEM Management. Now before the Court is Plaintiffs' unopposed Motion for Settlement Approval. Because the proposed settlement is a fair and reasonable resolution of the parties' dispute, the Court will grant Plaintiffs' motion.

## BACKGROUND

      Plaintiffs, Assistant Managers ("AMs") at International House of Pancakes, brought this collective action suit seeking to recover unpaid overtime compensation for hours worked in excess of forty hours per week between October 5, 2019 and October 5, 2022. Two additional AMs opted into the action, and Plaintiffs allege there are 28 others similarly situated. Defendants denied the allegations, maintaining that all AMs were properly classified as overtime exempt pursuant to 29 U.S.C. § 213(a)(1). On February 2, 2022, the parties requested a stay of litigation to facilitate settlement negotiation. As part of that process, Defendants "produced certain data and information to Plaintiffs to permit meaningful settlement discussions." Conway Decl. ¶ 7, ECF No. 47-2 at 3.

After an hours-long settlement conference before Judge Carlos on October 6, 2022, the parties arrived at an agreement.

Under the proposed Settlement Agreement, Defendants will pay a total of $67,500.00 in four installments. Agreement ¶¶ III.A-B, ECF No. 47-2 at 16. The fund will be distributed as follows: (1) $34,000 to Plaintiffs and 28 Putative Collective Members; (2) $5,000 in service awards to Plaintiffs and the two Current Opt-Ins, Louis Gelsomini and Allyson Harms; (3) up to $5,000 to the Settlement Administrator, Analytics Consulting, LLC; and (4) $22,5000 to Plaintiffs' Counsel for attorneys' fees and expenses. *See id*. Plaintiffs and Putative Collective Members will receive a pro-rata portion of the $34,000 based on the number of weeks they worked during the relevant time period. *Id.* ¶ IV.A. These payments are equivalent to one hour of overtime pay per week worked. Conway Decl. ¶ 13, ECF No. 47-2 at 5. In exchange, Plaintiffs and Putative Collective Members will agree to release all claims against Defendants related to past unpaid wages. Agreement ¶ VIII.A, ECF No. 47-2 at 16. In addition, the Agreement includes a confidentiality provision prohibiting parties from disseminating any information about the case beyond that which is already public. *Id.* ¶ X.

**CERTIFICATION OF COLLECTIVE ACTION**

Because the parties request approval of a settlement resolving collective action claims, the Court must first certify the FLSA collective action before considering the terms of the Agreement. *See Bredbenner v. Liberty Travel*, Civ. No. 09-905, 2011 WL 1344745, at *16 (D.N.J. Apr. 8, 2011). Under the FLSA, an employee may bring an action on "behalf of himself" or on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Before an FLSA action may proceed, a district court must certify that other putative collective members are in fact similarly situated to the named plaintiffs. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). The

typical FLSA case involves both preliminary and final certification. *Id.* Due to this case's procedural posture, however, the Court never granted preliminary approval of the proposed collective action. The Court therefore assesses whether the proposed collective action meets the requirements for final certification, which is the "stricter standard." *Id.* at 535.

At the final certification stage, a plaintiff must conclusively show the collective group is in fact similarly situated. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). Factors that a court may consider in determining whether members are similarly situated include "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala*, 691 F.3d at 536-37.

For the purpose of evaluating the parties' Settlement Agreement only, *see Keller v. TD Bank, N.A.*, Civ. No. 12-5054, 2014 WL 5591033, at *9 (E.D. Pa. Nov. 4, 2014), the Court finds the 28 Putative Collective Members are similarly situated to the named Plaintiffs. They were all Assistant Managers who worked for Defendants during the same time period and were subject to the same policies and practices. *See* Compl. ¶¶ 7, 52, ECF No. 1; *see also id.* ¶ 30 ("Defendants applied the same employment policies, practices, and procedures to all [Assistant Managers] nationwide."). Defendants classified each of the Putative Collective Members as exempt; it is this policy that precipitated the FLSA claim. Because the Putative Collective Members are similarly situated, the Court grants certification of the collective action for the purposes of settlement.

**APPROVAL OF GROSS SETTLEMENT**

A settlement of FLSA claims must be approved either by the Department of Labor or a federal district court. *Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa.

2014) (citing 29 U.S.C. §§ 216(b)-(c)). Before approving a collective action settlement under the FLSA, the Court must consider whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 523 (E.D. Pa. 2016) (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)). A settlement resolves a bona fide dispute when its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Id.* And a settlement is fair and reasonable when it (1) fairly compensates employees ("internal" fairness), and (2) "furthers the FLSA's implementation in the workplace" ("external" fairness). *Id.* "The guiding principle of the Court's inquiry in determining whether to approve the settlement of a FLSA collective action is ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Hernandez v. Earth Care, Inc.*, Civ. No. 15-5091, 2016 WL 3981348, at *2 (E.D. Pa. July 25, 2016).

First, the Settlement Agreement resolves a bona fide dispute because there are outstanding factual disagreements between the parties. *See Kraus*, 155 F. Supp. 3d. at 530 ("A dispute is bona fide where it involves factual rather than legal issues."). They continue to dispute whether Plaintiffs were properly classified as exempt, how many hours Putative Class Members worked, and whether Defendants acted in good faith. "Disagreements over hours worked or compensation due clearly establish a bona fide dispute." *Hernandez*, 2016 WL 3981348, at *3 (internal quotation marks and citation omitted).

Second, the settlement is fair and reasonable, both internally and externally. In evaluating the internal factors of fairness in the context of collective actions, courts apply the same factors as in class actions:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* (applying the class action factors from *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) to collective action under the FLSA).

Most of the *Girsh* factors weigh in favor of approval. First, the complexity, expense, and potential duration of the litigation are all significant because of the stage of litigation: the parties still must engage in extensive discovery, preliminary and final collective action certification, and dispositive motions practice. Second, the Plaintiffs and Opt-Ins "unreservedly" support the Settlement Agreement, suggesting the Putative Collective Members would also receive it favorably. Mem. Supp. Mot. Settlement 10, ECF No. 47-1. The third factor is not as clear because, as noted above, not much formal discovery has occurred. However, prior to the settlement conference with Judge Carlos, the parties traded material they deemed important to facilitate negotiations. Given that they came to an agreement, the parties likely received enough information to possess an "adequate appreciation of the merits of the case." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). Further favoring fairness, this settlement occurs over three years after the filing of the complaint. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995) (noting as relevant to this factor the stage of litigation in "reference to the commencement of proceedings").

The fourth and fifth factors concern the risks of establishing liability and damages, or the risks of continued litigation. The Court could decline to certify the collective action, or a jury could find that Plaintiffs were properly classified as exempt. The many outstanding issues of fact here

5

reveal that Plaintiffs could very likely be foreclosed from recovery entirely if they were to go to trial. This factor therefore favors approval of the settlement. The sixth and related factor—the risk of maintaining the action through trial—is large, given that the collective action has not yet been certified, and could even be later decertified. The seventh factor is neutral, as there is no evidence to suggest that Defendants are unable to pay more than the settlement amount. The final *Girsh* factors require considering "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the attendant risks of litigation." *Girsh*, 521 F.2d at 157. The Court assesses "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). At this stage in the litigation, the Court does not have sufficient information as to the strength of the case or the total possible exposure Defendants are facing. Plaintiffs' counsel, however, believes the settlement is an "excellent result." Conway Decl. ¶ 14, ECF No. 42-2 at 5. The beliefs of experienced counsel as to the fairness of settlements should be granted significant weight. *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001). In sum, the *Girsh* factors support a finding that the settlement is internally fair and reasonable.

Moving on to the "external" factors, the Settlement Agreement is fair because it facilitates the purpose of the FLSA: to "protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark.-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). The release provisions of the Settlement Agreement are sufficiently narrow to protect Plaintiffs and Putative Collective Members. *See Kraus*, 155 F. Supp. at 532-33 (finding that broad provisions which release liability for "any and all claims" do not further the purpose of the FLSA). The Agreement only releases Defendants from claims related to this overtime claim under the FLSA. Agreement ¶ VIII.A, ECF No. 47-2 at 21. The confidentiality clause is also narrow enough to align with the

purpose of the FLSA. Confidentiality provisions are disfavored in FLSA settlement agreements because they thwart the "informational objective" of the statute. *Brumley v. Camin Cargo Control, Inc.*, Civ. No. 08-1798, 2012 WL 1019337, at *7 (D.N.J. Mar. 26, 2012) (quoting *Dees v. Hydradry, Inc.*, 606 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)). An employer is obligated to pay overtime to non-exempt employees; "the district court should not become complicit in any scheme or mechanism designed to confine or frustrate every employee's knowledge and realization of FLSA rights." *Id.* The Agreement here provides that the Parties "shall not publish or disseminate any information about the Action that is not public information." Agreement ¶ X, ECF No. 47-2 at 22. Because this case is not filed under seal, the Agreement itself is public information. Therefore, Plaintiffs will not be prohibited from discussing the matter with other employees. *See In re Chickie's & Pete's Wage & Hour Litig.*, Civ. No. 12-6820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014) ("The details of the Proposed Agreement are available to all as part of the public record, and Plaintiffs will be permitted to discuss the matter with fellow employees and others without forfeiting their awards."). Thus, the Agreement does not frustrate the purposes of the FLSA and is externally as well as internally fair.

Finally, the proposed Notice of Settlement is also reasonable, as it is "timely, accurate, and informative." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). It is clear and easily digestible. *See* Notice 1, ECF No. 47-2 at 37. The notice includes the important information Putative Collective Members need to know: how the settlement amount was calculated, the consequences of joining, and who to contact for further questions. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 328 (3d Cir. 1998) (detailing the "required information concerning the class members' right and objections under the settlement"). The Court finds the Notice of Settlement to be fair and reasonable.

**APPROVAL OF OTHER PAYMENTS**

The Agreement provides for service awards totaling $6,000 for the two Plaintiffs and two Opt-In Members. Agreement ¶ I, ECF No. 47-2 at 19. Service awards are intended "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation" and to "reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (citation omitted). These individuals shared important facts with counsel, provided documents to prove their claims, and conferred on the issue of settlement. Plaintiffs also sat for a long deposition. $2,500 for two plaintiffs and $500 for two additional members are reasonable amounts when considering awards regularly recovered in similar cases. *See, e.g.*, *Devil v. Ferrandino & Son, Inc.*, Civ. No. 15-4976, 2016 WL 7178338, at *3 (E.D. Pa. Dec. 9, 2016) ($7,500 each); *Schaub v. Chesapeake & Del. Brewing Holdings*, Civ. No. 16-756, 2016 WL 9776070, at *5 (E.D. Pa. Nov. 14, 2016) ($9,000); *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) ($5,000 and $10,000, depending on extent of involvement).

Next, Plaintiffs seek payment of up to $5,000 to Analytics Consulting, LLC as Settlement Administrator. Plaintiffs' counsel certifies that this amount is reasonable and typical in FLSA cases. Conway Decl. ¶ 32, ECF No. 47-2 at 12. Analytics has been approved as an Administrator before in this district. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 225 (E.D. Pa. 2014). Engaging a Settlement Administrator to assist with independent disbursement of funds is good practice. *See Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 499 (E.D. Pa. 2018) (detailing the varied and valued roles of a settlement administrator).

Finally, Plaintiffs seek $22,500 in attorneys' fees and costs pursuant to 29 U.S.C. § 216(b). The proposed Settlement Agreement includes recovery of $3,157.23 in fees, including investigator

8

fees, deposition transcript fees, and mailing costs. Conway Decl. ¶ 31, ECF No. 47-2 at 12. Counsel's compensation would therefore total $19,342.77. "[A] thorough judicial review of fee applications is required in all class action settlements." *In re Prudential*, 148 F.3d at 333 (citation omitted). In common fund cases, the percentage of recovery method is usually preferred. *See in re Rite Aid Corp Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005). However, in FLSA cases, the Third Circuit prefers the lodestar formula. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001). The lodestar method "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.*

Plaintiffs' Counsel avers they have spent 231.7 hours on this case. Conway Decl. ¶ 12, ECF No. 47-2 at 10. For the length and complexity of this litigation, having been active for over three years, this is a reasonable number; it is not "excessive, redundant, or otherwise unnecessary." *Loughner*, 260 F.3d at 178. Mr. Conway, lead counsel, charges a rate of $550 per hour, which is also reasonable when considering the prevailing market rates in Philadelphia. Conway Decl. ¶ 27, ECF No. 47-2 at 11; *Loughner*, 260 F.3d at 180. Community Legal Services notes that the market rate for attorneys with more than 15 years of experience in Philadelphia was $535-$625 per hour; Mr. Conway's rate is on the low end of this range. *See Attorney's Fees*, COMMUNITY LEGAL SERVICES, https://clsphila.org/about-community-legal-services/attorney-fees/ (last updated Jan. 19, 2023). Courts have approved much higher rates in the past. *See, e.g.*, *Fulton-Green v. Accolade, Inc.*, Civ. No. 18-274, 2019 WL 4677954, at * 12 (E.D. Pa. Sept. 24, 2019) (approving a rate of $975 per hour). Accordingly, the Court finds both the hours expended and the rate earned to be reasonable.

Multiplying the hours by the hourly rate results in a lodestar of $127,435. Counsel is requesting $19,342.77, which leads to a lodestar multiplier of 0.16. "A lodestar multiplier of less

than one . . . reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval." *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 767 (E.D. Pa. 2016) (internal quotation marks and citation omitted). Further, although the Third Circuit prefers the lodestar method for FLSA cases, a cross-check using the percentage-of-recovery approach shows that the requested amount of one-third of the fund is reasonable. *See Mabry v. Hildebrandt*, Civ. No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting FLSA cases involving percentages of recovery from 20-45%). The Court will approve the requested fee application.

**CONCLUSION**

The Court finds the Settlement Agreement to be a fair and reasonable resolution of this dispute. Plaintiffs' unopposed Motion for Approval of Settlement will be granted.

An appropriate Order follows.

BY THE COURT:

_____
Juan R. Sánchez, C.J.